The Provident Loan & Building Association of La Crosse,
Respondent, vs. Carter and another, Appellants.

*September 6 — September 25, 1900.*

*Building and loan associations: Mortgages: Application of payments:
Ultra vires: Estoppel: Subsequent incumbrancer: Notice: Record-
ing act: Marshaling funds: Laches: Default in payments: Prema-
ture commencement of action.*

1. A building and loan association, on making a loan to C., took a mort-
gage on real estate, and also an assignment of C.'s shares of stock,
for security. C. executed a second mortgage on said real estate to
the defendant M., and thereafter the association, in ignorance of
M.'s mortgage, made a second loan to C. and took an assignment of
the equity in C.'s stock as security. *Held,* that M. had no absolute
right to have the value of C.'s stock applied in payment of the
plaintiff's mortgage.

2. In such case C. cannot question the authority of the association to
make the loan; as a member of the association he was bound to
take notice of the limitations upon its power, and, having assented
to the transaction, he is estopped from contesting it.

3. In such case the making of the second loan was not *ultra vires,* it
being within the general powers of the association.

4. A building and loan association made a loan to C., who was a mem-
ber, and took a mortgage on his real estate and an assignment of
his stock as security, and afterwards made a second loan on the
security of the equity C. had in his stock. *Held,* that M., a second
mortgagee, could not question the authority of the association to
make the second loan: M.'s rights must be tested by his status as a
subsequent incumbrancer of mortgaged property, unless he gave
the association notice of the existence of his mortgage before the
second loan was made.

5. In such case the record of the second mortgage was not notice
thereof to the association. The recording act applies only to sub-
sequent purchasers or incumbrancers.

6. Where plaintiff has security on two funds and defendant upon one
of them, and, without notice that defendant has any interest in
either, the plaintiff in good faith disposes of the fund upon which
defendant has no claim, the laches of the defendant precludes him
from insisting that plaintiff shall first exhaust his remedy against
the fund upon which defendant has no security.

The Provident Loan & Building Ass'n vs. Carter and another.

7. Where the by-laws of a building and loan association provided that, in case of nonpayment of instalments of interest or premium by borrowing stockholders *for the space of six months*, proceedings might be taken on the bond or mortgage to collect the same according to law, and it was admitted that all payments on defendant's bond and mortgage, which required payments to be made on or before the second Monday of each month, had been made to and including that which became due the second Monday of March, the first default occurred on the second Monday of April, and an action commenced September 21 following was premature.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

The plaintiff is a loan and building association organized under the laws of this state. In April, 1889, the defendant *Carter* applied to the plaintiff for a loan. He then subscribed for twelve shares of the eleventh series of stock, which commenced on the second Monday of February of that year. On April 15th he executed the mortgage in suit to secure a bond conditioned to pay plaintiff $600 at or before the maturity of the eleventh series of stock, with six per cent. interest from April 8, 1898, payable monthly on or before the second Monday of each month, in advance. At the same time he made an assignment of his stock as collateral security for his debt. The matured value of stock was $50, and according to the rules of the company defendant's payments on stock and for interest and premium amounted to $8.40 per month. The defendant kept up and made his payments regularly up to and including the one which became due on the second Monday of March, 1899. He then defaulted, and this action of foreclosure was commenced on September 21, 1899. The defendant *Carter* answered, alleging payment of all dues and interest up to and including the month of May, 1899, and alleged that, according to the by-laws of the company and its charter, there was only $42.96 due on the mortgage. The defendant *Mueller* was made a party as a subsequent incumbrancer. It appears

from his answer that April 24, 1896, the defendant *Carter* executed a second mortgage upon the premises for $1,500 to the G. Heilman Brewing Company, which was assigned to *Mueller* in May following. His answer sets up the existence of his mortgage, that *Carter* is in default, and that a suit to foreclose has been commenced. He also sets up payment of plaintiff's mortgage except $50. The defendant *Carter* claimed that the action was prematurely brought, six months not having elapsed between the time of his default and the commencement of the action. The issue was tried, and found adversely to defendant.

Upon the trial of the case on its merits it appeared that on July 16, 1898, the plaintiff made a further loan to *Carter* of $600 upon his promissory note, and took as security therefor an assignment of his equity in the twelve shares of stock already pledged as security for the first loan. On the date this suit was commenced *Carter's* stock is said to have been worth $569.04, and this amount was applied upon the last loan. The court made findings that the allegations of the complaint were proven and true, and that the allegations of the answer were not true; that no payments had been made upon the bond and mortgage in suit except as mentioned in the complaint, and that there was due thereon for principal and interest $658.06; also that at the time the second loan was made to *Carter* the plaintiff had no notice of the second mortgage, now held by the defendant *Mueller*. The usual judgment of foreclosure and sale was ordered. The defendants *Carter* and *Mueller* have appealed.

For the appellants there were separate briefs by *Miller & Wolfe*, attorneys for *Mueller*, and *John A. Daniels*, attorney for *Carter*, and oral argument by *W. F. Wolfe*.

*Martin Bergh*, for the respondent.

BARDEEN, J. 1. The defendant *Mueller* bases his argument that the judgment should be reversed upon the claim

The Provident Loan & Building Ass'n vs. Carter and another.

that, as a subsequent mortgagee, he had an absolute right to have the value of *Carter's* stock applied in payment of the plaintiff's mortgage. The plaintiff had no dealing with him. It had no actual knowledge of the existence of his mortgage. It owed him no duty except such as the law requires between parties having successive claims upon the same property. When plaintiff took its mortgage, it also took an assignment of the mortgagor's stock as further security. Later, and after the defendant had taken the second mortgage, it loaned *Carter* more money, and took as security an assignment of his equity in such stock. When the loan became due and *Carter* had defaulted on his stock payments, it applied the value of his stock in liquidation of his last loan. Some question is made by both defendants that the plaintiff had no authority to make this loan. As to the defendant *Carter*, this contention comes with very poor grace. He was a member of the association, and bound to take notice of the limitations upon its power, and, having assented to the transaction, he is foreclosed from contesting it. *Leahy v. Nat. B. & L. Asso.* 100 Wis. 555-566. But the transaction was not *ultra vires*. It was within the scope of its general powers; and, even if the security may be deemed inadequate, *Mueller*, an outsider, cannot complain. His rights must be tested by his status as a subsequent incumbrancer of the mortgaged property. Unquestionably, if he had given plaintiff notice of the existence of his mortgage before the second loan was made, the status then existing between it and *Carter* could not have been changed to his prejudice. We agree with the finding of the court that plaintiff had no such notice. The record of the mortgage was not such notice. The recording act has no application to the situation. That applies to subsequent purchasers or incumbrancers. We then have this condition of things: Plaintiff had security on two funds; defendant upon one of them. The rule ordinarily would be that defendant could

The Provident Loan & Building Ass'n vs. Carter and another.

require the plaintiff to exhaust his remedy against the fund upon which he had no security. But without notice that defendant had any interest in either, the plaintiff disposed of the fund upon which defendant has no claim. The transaction was in good faith. Without notice, plaintiff was free to deal with its stock in any way it pleased. Hence the laches of *Mueller* precludes him now from insisting that the value of *Carter's* stock shall first be applied in satisfaction of the plaintiff's mortgage.

2. We will now consider the question of whether this action was prematurely brought. Sec. 3, art. 7, of the plaintiff's by-laws is as follows: "In case of nonpayment of instalments of interest or premium by borrowing stockholders *for the space of six months*, the directors may compel payment of principal and interest, premiums and fines, by proceeding on the bond or mortgage to collect the same according to law." This by-law was expressly made a part of defendant's mortgage. By the terms of the bond, payments were to be made on or before the second Monday of each month. The bond also contained the following provision: "Provided, however, and it is hereby expressly agreed, that if at any time default shall be made in the payment of the said principal money when due, or in the payment of the said interest or of the said monthly premium, for the space of six months after the same or any part thereof shall have become due, or should the said stock upon which this loan is made be sold for the nonpayment of dues," etc., the whole amount should become due, and payment could be enforced at once. It is admitted that all payments were made up to and including the payment that became due on the second Monday of March, 1899, and that such payment kept the loan current until the second Monday of April of that year. This suit was commenced September 21, 1899. The defendant *Carter* claimed that payments had been made for April and May, but upon the evidence presented the court found against

The Provident Loan & Building Ass'n vs. Carter and another.

him.   This leaves the question fairly presented whether, at the time this suit was brought, he was in default "for the space of six months" after his payments became due.   The first payment for which he was in default became due on the second Monday of April.   The plaintiff argues, and the court so found, that when the defendant defaulted in the April payment he then became one month in default, and that when he failed to make payment on the second Monday of September he was six months in default, and thus the calls of his contract have been met; in other words, if the defendant defaulted in six payments, he then became six months in arrears, within the terms of the contract.   If this was the result intended, the plaintiff was singularly unfortunate in the wording of its by-laws.   According to the plain letter of the provision, the principal sum did not become due until stock and interest payments had been due "for the space of six months."   Nothing is said about default in six monthly payments.   The language used is too plain for construction. It means that six months must elapse from the time of the default before the cause of action ripened.   This was their contract, and upon it they must stand.   It being conceded that the first default occurred on the second Monday of April, the full space of six months must elapse thereafter before a suit could be rightfully commenced.   Hence the commencement of a suit before October was premature.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the action.